FILED
CLERK, U.S. DISTRICT COURT

MAY 1 3 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. **CR13-0329** |
|---|---|
| Plaintiff, | ) <u>I N F O R M A T I O N</u> |
| v. | ) [18 U.S.C. § 1349: Conspiracy |
| CLEMENT ETIM AGHEDO, | ) to Commit Health Care Fraud; |
|     aka "Clement Etinayagomwan Aghedo," | ) 18 U.S.C. § 982: Criminal Forfeiture] |
|     aka "Etin Aghedo," | ) |
| Defendant. | ) |

The United States Attorney charges:

[18 U.S.C. § 1349]

A.  <u>INTRODUCTORY ALLEGATIONS</u>

At all times relevant to this Information:

<u>The Defendant</u>

1.  Defendant CLEMENT ETIM AGHEDO ("defendant AGHEDO"), also known as "Clement Etinayagomwan Aghedo" and "Etin Aghedo," owned and operated a durable medical equipment ("DME") supply company known as Ace Medical Equipment Supply Company from in or about November 2006, which defendant AGHEDO subsequently incorporated, owned, and operated as Ace Medical Supply, Inc.

1 (collectively "Ace") from in or about October 2008. Defendant AGHEDO enrolled Ace as a provider in the Medicare Program ("Medicare") and Ace had Medicare provider numbers that allowed it to submit claims for reimbursement to Medicare. Defendant AGHEDO was responsible for all the claims that Ace submitted to Medicare.

2. Ace's offices were located at 248 East Highland Avenue, Suite 2, San Bernardino, California, within the Central District of California.

3. Between in or about November 2006 and in or about May 2012, Ace submitted to Medicare claims totaling approximately $1,853,828 and received approximately $990,806 in reimbursement payments from Medicare to which it was not entitled.

The Medicare Program

4. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

5. CMS contracted with private insurance companies to (a) certify DME providers for participation in the Medicare program and monitor their compliance with Medicare standards; (b) process and pay claims; and (c) perform program safeguard functions, such as identifying and reviewing suspect claims.

6. Medicare assigned each Medicare beneficiary a Health Identification Card containing a unique identification number ("HICN").

7. DME companies, physicians, and other health care providers which provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

8. To obtain payment from Medicare, a DME company first had to apply for and obtain a provider number. By signing the provider application, the DME provider agreed to abide by Medicare rules and regulations, including the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)), which, among other things, prohibits the payment of kickbacks or bribes for the referral of Medicare beneficiaries for any item or service for which payment may be made by Medicare.

9. If Medicare approved a provider's application, Medicare assigned the provider a Medicare provider number, enabling the provider (such as a DME company) to submit claims to Medicare for services and supplies provided to Medicare beneficiaries.

10. To obtain and maintain their Medicare provider number billing privileges, DME suppliers had to meet Medicare standards for participation. The Medicare contractor responsible for evaluating and certifying DME providers' compliance with these standards was Palmetto GBA ("Palmetto").

11. Noridian Administrative Services ("Noridian") was the Medicare contractor that processed and paid Medicare claims by DME providers in Southern California.

12. Most Medicare providers, including Ace, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

13. Medicare paid DME providers only for DME and services that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician, and were provided in accordance with Medicare regulations and guidelines that governed whether a particular item or service would be paid by Medicare.

14. To bill Medicare for DME or a service it provided to a beneficiary, a DME provider was required to submit a claim (Form 1500) to Noridian or CIGNA. Medicare required claims to be truthful, complete, and not misleading. In addition, when a claim was submitted, the DME provider was required to certify that the DME or services covered by the claim were medically necessary.

15. Medicare required a claim for payment to set forth, among other things, the beneficiary's name and HICN, the type of DME provided to the beneficiary, the date the DME was provided, and the name and unique physician identification number ("UPIN") of the physician who prescribed or ordered the DME.

16. Medicare had a co-payment requirement for DME. Medicare reimbursed providers 80% of the allowed amount of a DME claim and the beneficiary was ordinarily obligated to pay the remaining 20%.

B. THE OBJECT OF THE CONSPIRACY

17. Beginning in or about March 2007, and continuing through in or about May 2012, in San Bernardino County, within the Central District of California, and elsewhere, defendant AGHEDO, together with marketers and others known and unknown to the United States Attorney, knowingly combined, conspired, and

agreed to commit health care fraud, in violation of Title 18, United States Code, Section 1347.

C.   THE MANNER AND MEANS OF THE CONSPIRACY

18.   The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

   a.   Defendant AGHEDO paid marketers to recruit Medicare beneficiaries for expensive, highly-specialized power wheelchairs and other DME for which the beneficiaries did not have a legitimate medical need.  The marketers promised the beneficiaries that they would receive the power wheelchairs and DME for free if the beneficiaries provided the marketers with their Medicare billing and personal information.

   b.   Once the marketers obtained the beneficiaries' personal and Medicare information, they sold the information along with fraudulent prescriptions and medical documents to defendant AGHEDO, who paid the marketers illegal cash kickbacks.

   c.   Defendant AGHEDO used the beneficiary information and the fraudulent prescriptions and medical documents that he purchased from the marketers to submit false and fraudulent claims to Medicare for power wheelchairs and other DME that was not medically necessary.

   d.   In some cases, defendant AGHEDO submitted claims to Medicare for power wheelchairs and other DME before he actually delivered the equipment, a practice that violated Medicare rules and regulations.

## FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(7)]

19. The Grand Jury hereby realleges and incorporates by reference paragraphs one through eighteen of this Information as though fully set forth herein, for the purpose of alleging forfeiture, pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

20. Paragraphs one through eighteen of this Information allege acts or activities constituting federal health care fraud offenses pursuant to Title 18, United States Code, Section 1349. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of a federal health care fraud offense, defendant AGHEDO shall forfeit to the United States of America:

    a. All right, title, and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense; and

    b. A sum of money equal to the total amount of gross proceeds derived from such offense.

21. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), a defendant so convicted shall forfeit substitute property, up to the value of the amount described in paragraph twenty, if, by any act or omission of said defendant, the property described in paragraph twenty, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the

jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

ANDRÉ BIROTTE JR.
United States Attorney

*/s/ R. E. Dugdale*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

CONSUELO WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GEJAA GOBENA
Co-Deputy Chief, Fraud Section
United States Department of Justice

BENTON CURTIS
Assistant Deputy Chief, Fraud Section
United States Department of Justice

JONATHAN T. BAUM
Trial Attorney, Fraud Section
United States Department of Justice